**NOT FOR PUBLICATION**                                            **[1]**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | : |
| | : Civil Action No. 09-2514(FLW) |
| MICHAEL STERNBERG, aka, | : |
| MICHAEL A. STERNBERG, | : |
| | : |
| Debtor, | : |
| | : |
| UNIVERSAL BROADBAND | : |
| NETWORKS, INC., | : |
| | : |
| Appellant, | : **OPINION** |
| | : |
| v. | : |
| | : |
| MICHAEL STERNBERG, | : |
| | : |
| Appellee. | : |
| | : |

**WOLFSON, United States District Judge:**

Appellant Universal Broadband Networks, Inc. ("UBN") appeals a final Order of
the Bankruptcy Court dated April 16, 2009, granting summary judgment to Michael
Sternberg ("Debtor" or "Sternberg"), determining a debt to be dischargeable under 11
U.S.C. § 523(a)(4), and denying UBN's cross-motion for summary judgment. This Court
has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28
U.S.C.§ 158(a)(1).   For the reasons that follow, the Court will affirm the decision of the
Bankruptcy Court.

**I.  BACKGROUND**

In the Spring of 2000, UBN, a Delaware telecommunications corporation with its principal place of business in California, offered Debtor a position as its chief executive officer.  Debtor accepted the offer and entered into an employment agreement (the "Agreement") pursuant to which he received a $1,000,000 sign-on bonus (the "Bonus). Debtor began working at UBN in July 2000 and received the Bonus from UBN on August 3, 2000, which, after deduction of income taxes, totaled $642,408.83.  Under the terms of the Agreement, while Debtor was to receive the full amount of the Bonus upon execution and delivery of the Agreement, he was to "earn" the Bonus during the "Term" of the Agreement, which was two years.  Although the Bonus was to be earned over the two year term, the Agreement provided that if Debtor voluntarily terminated his employment with UBN during the two-year period without "good reason," or was otherwise terminated for "cause," "then the amount of the Sign-On bonus shall be reduced in proportion to the amount of time left in the first year of employment at the date of such termination."

On October 23, 2000, UBN's Board of Directors, of which Debtor was a member, authorized the filing of a Chapter 11 bankruptcy petition by UBN.  Thereafter, in January of 2001, Debtor ceased working at UBN, but did not return any portion of the Bonus. UBN filed a complaint against Debtor on August 16, 2002 in the Superior Court of California alleging, among other things, that Debtor breached the Agreement by failing to return the unearned portion of the Bonus.  The State Court Action was subsequently removed to the United States District Court for the Central District of California. Following a jury trial, a verdict was returned in favor of UBN, awarding compensatory damages against Debtor in the principal amount of $416,400.00, plus pre-judgment interest in the amount of $113,877.39 and post-judgment interest.  Thereafter, the

California district court awarded UBN its costs of suit in the amount of $6,108.25 and attorneys' fees in the amount of $169, 707.70. The total amount owing to UBN from the judgment was $592,215.95, plus post-judgment interest (the "Judgment"). Debtor failed to make any payments on the Judgment and, on May 15, 2008, sought relief under Chapter 7 by filing a petition with the Bankruptcy Court in the District of New Jersey, where Debtor resides.

Thereafter, on August 22, 2008, UBN commenced the adversary proceeding that gives rise to the instant appeal, seeking an order determining that the Judgment is non-dischargeable under 11 U.S.C. § 523(a)(4) and (c)(1). In the adversary complaint, UBN alleged that "[a]s UBN's Chief Executive Officer and as a member of its board of directors, [Debtor] owed UBN a fiduciary duty within the meaning of 11 U.S.C. § 523(a)(4) and held the Sign-On Bonus in trust until fully earned pursuant to the terms of the Employment Agreement." Compl. at ¶ 13. In short, UBN alleged that the Judgment was non-dischargeable under § 523(a)(4) because the Bonus was incurred via defalcation while Debtor was acting in a fiduciary capacity in his position as an officer and director of UBN.

The parties appeared before the Bankruptcy Court on April 6, 2009 on cross-motions for summary judgment.[1] Following argument by the parties, the Bankruptcy Court granted Debtor's motion, finding that Debtor's failure to return the unearned portion of the Bonus did not constitute defalcation under § 523(a)(4). The Bankruptcy Court

---

[1]    Debtor filed his motion under Fed. R. Civ. Pro. 12(b)(6), but alternatively sought relief under Rule 56. The Bankruptcy Court treated the motion as one for summary judgment, noting that while Debtor's Statement of Undisputed Material Facts was not timely filed, it was within the Court's authority to treat a motion to dismiss as one for summary judgment. T25:10 - 26:2.

rejected UBN's contention that Debtor was acting in a "fiduciary capacity" within the meaning of § 523(a)(4) and further concluded that Debtor's failure to account for and refund the unearned portion of the Bonus in accordance with the Agreement was not defalcation under § 523(a)(4), but "was merely a breach of contract."  T35:23 - T36:7.  On April 16, 2009, the Bankruptcy Court entered the Order granting Debtor's motion for summary judgment determining the debt to be dischargeable for the reasons stated on the record on April 6, 2009 and denying UBN's cross-motion for summary judgment.  It is from the April 16, 2009 Order that UBN now appeals.[2]

## II.  STANDARD OF REVIEW

When reviewing a bankruptcy court's decision, the standard of review is determined by the nature of the issues presented on appeal. Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee, 321 B.R. 147, 157 (D.N.J. 2005).   In particular, factual determinations reviewed on appeal should not be set aside unless found to be "clearly erroneous." See Fed. R. Bankr. P. 8013; Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir. 1995);  In re Indian Palms Assocs., Ltd., 61 F.3d 197, 203 (3d Cir. 1995).  Review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 50 U.S. 602, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993).  Conversely, legal conclusions from the bankruptcy court are subject to *de novo* or plenary review by the district court.  Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997); Chemetron, 72 F.3d at 345.  Mixed findings of fact and conclusions of law must be broken down, and the applicable standards--"clearly erroneous" or *de novo*--

---

[2]      Debtor, unrepresented by counsel on appeal, has filed no papers with this Court in connection with the instant appeal.

must be appropriately applied to each component. <u>Meridian Bank v. Alten</u>, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing <u>In re Sharon Steel Corp.</u>, 871 F.2d 1217, 1222 (3d Cir. 1989) and <u>Universal Minerals, Inc. v. C.A. Hughes & Co.</u>, 669 F.2d 98, 102-03 (3d Cir. 1981)).

UBN does not challenge the factual findings of the Bankruptcy Judge on appeal, rather UBN takes issue with the legal determination that Debtor was not a "fiduciary" within the meaning of 11 U.S.C. § 523(a)(4) and that Debtor's failure to return the unearned portion of the Bonus did not constitute "defalcation" within the meaning of 11 U.S.C. § 523(a)(4). Accordingly, this Court will exercise plenary review to ascertain whether the factual findings and record are sufficient to support the Bankruptcy Judge's determination as a matter of law. <u>See</u> <u>Universal Minerals, Inc. v. C.A. Hughes & Co.</u>, 669 F.2d at 102-03 (holding that plenary review shall apply to lower court's "choice and interpretation of legal precepts and its application of those precepts to the historical facts.").

## III. DISCUSSION

It is well established that a creditor objecting to the dischargeability of a debt bears the burden of proving, by a preponderance of the evidence, that the particular debt falls within one of the exceptions to discharge enumerated in 11 U.S.C. § 523(a). <u>Grogan v. Garner</u>, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed. 2d 755 (1991). Section 523(a)(4), on which UBN relies, provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt --
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

UBN argues that the Judgment is non-dischargeable under § 523(a)(4) because the underlying debt (i.e. the Bonus) was incurred by way of defalcation by Debtor while he was acting in a fiduciary capacity.  Accordingly, the burden was on UBN to prove (i) that Debtor was acting in a fiduciary capacity when he committed the alleged wrong; and (ii) that Debtor indeed committed "defalcation" within the meaning of § 523(a)(4) while acting in that capacity.  The Bankruptcy Court concluded that UBN failed to establish either.  It is from that determination that UBN now appeals.

The Bankruptcy Court found that "debtor, as an officer and director of the plaintiff, a Delaware corporation, was not acting in a fiduciary capacity within the meaning of Section 523(a)(4)."  T23:8-11.  In so finding, the Bankruptcy Court incorporated by reference his opinion in Casini v. Graustein, 307 B.R. 800 (Bankr.D.N.J. 2004), in which he recounted the development of bankruptcy law with regard to the meaning of the term "fiduciary capacity" as follows:

> The phrase "while acting in a fiduciary capacity" has been the subject of several historical Supreme Court opinions and has developed a particular meaning from the earliest days of United States bankruptcy law. Not everyone labeled a fiduciary falls within the bankruptcy law's definition of "acting in a fiduciary capacity." In the seminal case Chapman v. Forsyth, 43 U.S. 202, 2 How. 202, 11 L.Ed. 236 (1844), the Supreme Court determined that a factor who failed to remit the proceeds of sale of his principal's goods, although a fiduciary under the laws of agency, was not "acting in a fiduciary capacity" within the exception to discharge in the nation's second bankruptcy law, The Bankruptcy Act of 1841. The Court reasoned that the phrase "while acting in any other fiduciary capacity" was preceded in the 1841 Act by "defalcation as a public officer, or as an executor, administrator, guardian, or trustee" which gave it context. The fiduciary must be of the same character as an executor, etc. and not anyone who may have an implied fiduciary duty.
>
> The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied but special trusts, and the "other

> fiduciary capacity" mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract.

Id., 43 U.S. at 208.

Furthermore, the Court felt that if all fiduciaries were included in the exception to discharge it would be too broad and could be stretched to encompass most commercial relations.

> If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

Id. at 208.

Almost fifty years later the Court revisited the phrase "while acting in any fiduciary character" from the nation's third bankruptcy law, the Bankruptcy Act of 1867. Upshur v. Briscoe, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891). The Supreme Court affirmed a decision from the Supreme Court of Louisiana that a written trust document was not a true trust but merely a debtor-creditor contract. Echoing the concern of the Court, expressed in Chapman v. Forsyth, that excepting from discharge all debts of fiduciaries would be too broad, the Court wrote:

> It said that the trust reposed in Briscoe was a trust simply in his "punctuality" and "integrity," the same trust which lies at the base of every agency, and of every loan or other credit; that the fact that the trust was expressed in the instrument added nothing to its nature, force, or effect; and that if the word "trust" had not been used, it would, nevertheless, have been implied in identical measure and strength.

Upshur v. Briscoe, 138 U.S. at 377, 11 S.Ct. 313.

7

Again, nearly two generations passed when the Supreme Court addressed the phrase "while acting in a fiduciary capacity" under the Bankruptcy Act of 1898. In <u>Davis v. Aetna Acceptance Co.</u>, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) a car dealer sold an automobile from inventory but failed to remit the proceeds to his finance company that had a lien on the car. Although the loan documents purported to make the car dealer a trustee of the collateral, Justice Cardozo writing for the Court said,

> The substance of the transaction is this, and nothing more, that the mortgagor, a debtor, has bound himself by covenant not to sell the mortgaged chattel without the mortgagee's approval. The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chose to speak of it as a trust.

<u>Id.</u> at 334, 55 S.Ct. 151.

Justice Cardozo explained, "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto." <u>Id.</u> at 333, 55 S.Ct. 151.

In this district Judge Stripp has succinctly summarized the development of the bankruptcy law regarding the exception to discharge for debtors acting in a fiduciary capacity as follows:

> The scope of the term "fiduciary" under §523(a)(4) is a question of federal law. <u>Matter of Rausch</u>, 49 B.R. 562, 563 (Bankr. D.N.J. 1985) (citing <u>Matter of Angelle</u>, 610 F.2d 1335, 1341 (5th Cir. 1980)). Analysis of state law, however, is necessary to determine when the requisite trust relationship exists. <u>Matter of Angelle</u>, 610 F.2d at 1341; <u>In re Librandi</u>, 183 B.R. 379, 382 (M.D.Pa. 1995). The traditional definition of "fiduciary" involving a relationship of confidence, trust and good faith, is too broad for the purpose of bankruptcy law. <u>Matter of Rausch</u>, 49 B.R. at 564 (citing <u>Chapman v. Forsyth</u>, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); <u>Upshur v. Brisco</u>, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); <u>Davis v. Aetna Acceptance Co.</u>, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); <u>Matter of Angelle</u>, supra). Rather, the meaning of "fiduciary" for purposes of Bankruptcy Code section 523(a)(4) is limited to instances involving express or technical trusts.

> Chapman v. Forsyth, 43 U.S. (2How) at 207, 11 L.Ed. at 238; Davis v. Aetna, 293 U.S. at 333, 55 S.Ct. at 153-54. Moreover, the trustee's duties must be independent of any contractual obligation between the parties and must be imposed prior to, rather than by virtue of, any claim of misappropriation.  Davis v. Aetna, 293 U.S. at 333, 55 S.Ct. at 154; Upshur v. Briscoe, 138 U.S. at 378, 11 S.Ct. at 317, 34 L.Ed. at 936.  Accordingly, implied or constructive trusts and trusts ex maleficio are not deemed to impose fiduciary relationships under the Bankruptcy Code.  Matter of Angelle, 610 F.2d at 1339. The reason for this narrow interpretation is to promote the Bankruptcy Code's "fresh start" policy. Id.

> New Jersey v. Kaczynski (In re Kaczynski), 188 B.R. 770 (Bankr.D.N.J. 1995).

> Whether a debtor was acting in a fiduciary capacity within the meaning of the Bankruptcy Code is a matter of federal law; however, federal courts look first to state law to see how the state treats the relationship.

Casini, 307 B.R. at 816-19.

UBN concedes, as it must, that the Bankruptcy Court correctly held that the scope of the term fiduciary under § 523(a)(4) is a question of federal law, but argues that the Bankruptcy court "rejected settled jurisprudence that recognizes a fiduciary status for a controlling officer of a corporation in the zone of insolvency."  Brief on Behalf of UBN at 8. UBN contends that Debtor's "fiduciary obligations to UBN arise under several different theories – each of which falls within the scope of § 523(a)(4).  First, Sternberg was the CEO and member of UBN's board of directors.  Second, he was the controlling officer of a company within the zone of insolvency.  Third, he was the principal officer of a debtor-in-possession under the Bankruptcy Code."  Id. at 10-11.  Given UBN's status as a Delaware corporation with its principal place of business in California, and the fact that the terms of the

Agreement provide that California law shall apply to the construction, interpretation and enforcement of the Agreement, UBN looks to cases interpreting fiduciary relationships under California and Delaware law to establish that Debtor was acting as a fiduciary within the meaning of § 523(a)(4).

Turning first to Debtor's position as CEO and board member, UBN argues that settled law in both California and Delaware recognize fiduciary status under § 523(a)(4) for persons such as Debtor.  Citing Moreno v. Ashworth, 892 F.2d 417 (5th Cir. 1990) wherein the court held that the president of a private corporation entrusted with funds was a fiduciary within the meaning of § 523(a)(4), UBN contends that it is clear that under California law that Debtor owed UBN a fiduciary duty as its CEO and director.  See Brief on Behalf of UBN at 11-12 (citing Bancroft-Whitney Co. v. Glen, 64 Cal.2d 327, 345 (1966)).  Similarly, under Delaware law, where courts have held that "[t]he director of a corporation organized under Delaware law is subject to duties substantially similar to those imposed on the trustee of an express or technical trust, and those duties arise before and without reference to any wrongdoing", UBN argues that as a director Debtor is a fiduciary within the meaning of § 523(a)(4).  Br. at 12-13 (quoting ATR-Kim Eng Capital Partners, Inc. v. Bonilla, 2007 Bankr. LEXIS 3566, 6-7 (Bankr.N.D.Cal. Oct. 16, 2007)).

Further, UBN contends that under both California and Delaware law, Debtor owed a fiduciary duty within the meaning of § 523(a)(4) to UBN and its creditors while it was within the "zone of insolvency".  Br. at 13.  In support of this contention, UBN cites Miramar Resources, Inc. v. Schultz, 208 B.R. 723, 729 (M.D.Fla. 1997), in which a Florida district court considering the issue of who is a fiduciary under Delaware law held

> [The Delaware Trust Fund Doctrine] states that upon a corporation's insolvency, "the trust arises, and the legality of the acts thereafter

performed [by the officers and directors] will be decided by very different principles than in the case of solvency." [Bovay v. HM. Byllesby & Co., 38 A.2d 808, 813 (Del. 1944)] Therefore, when the "insolvency exception" does arise, it creates fiduciary duties for directors for the benefit of creditors." See Geyer v. Ingersoll Publications Co., 621 A.2d 784, 787 (Del.Ch. 1992). Moreover, it has been found that "where a corporation is operating in the vicinity of insolvency, a board of directors is not merely the agent of the residue risk bearers, but owes its duty to the corporate enterprise." Credit Lyonnais Bank Nederland, N.V. v. Pathe Communicaitons, Corp., No. 12150, 1991 WL 277613 at *34 (Del.Ch. Dec. 30, 1991). Furthermore, in Askanase v. Fatjo, 1993 WL 208440 at *5 (S.D.Tex.), the Texas district court determined that the Delaware Trust Fund Doctrine comes into play not only in instances of complete insolvency, but also in instances where the corporation is "on the brink of insolvency." Additionally the Fatjo court stated that "[i]t is likewise of no importance that the director did not know the corporation was insolvent or believed it to be solvent." Id.

Urging the application of the "Delaware Trust Fund Doctrine", UBN reasons that when Debtor accepted the Bonus just three months before placing UBN into bankruptcy he was aware of the insolvent status of UBN and, accordingly, when he received the Bonus a trust relationship was created between Debtor and UBN with the *res* of the trust being UBN's assets, including the Bonus, and the beneficiaries being UBN and its creditors. UBN contends that Debtor violated that trust by failing to return the unearned portion of the Bonus. According to UBN, that same conclusion is true under California law. Brief on Behalf of UBN at 16 (citing Naham v. Jacks, 266 B.R. 728, 737 (9th Cir. BAP 2001) (holding that under California law all of the assets of the corporation become a trust for the benefit of creditors upon a corporation's insolvency and, accordingly, a sufficient trust relationship exists for the application of § 523(a)(4)) and Foster v. Lasagna, 609 F.2d 392, 395-96 (9th Cir. 1979) (where debtor officers and directors misappropriated assets of bankrupt company,

such conduct gave rise to an obligation and created an indebtedness by officers and directors

to company's creditors).

In finding Debtor's conduct outside the scope of § 523(a)(4), the Bankruptcy Court

held as follows:

> I don't see any distinction in New Jersey law and Delaware law as to the nature of the fiduciary relationship of an officer and director, even of a company in the zone of insolvency.  It may be that, and it is true that under Delaware law the universe of people entitled to rely on the fiduciary capacity of an officer and director expands to include creditors, but that doesn't change the nature of the relationship.  And the so-called Delaware Trust Fund Doctrine is a misnomer by the courts who have employed it.
> So following this long line of Supreme Court cases, I find that although a corporate officer or director may be a fiduciary under state law, that is not the type of fiduciary capacity meant by the bankruptcy code.  To hold otherwise would work the mischief feared by the Supreme Court, namely that breach of contract or agency type claims would be nondischargeable, threatening to have the exception to discharge swallow the fresh start that Congress intended. [T30:14 - T31:15].

In so holding, the Bankruptcy Court recognized the split of authority that exists.  For example

in Carretta v. Mercedes-Benz Credit Corporation, 219 B.R. 66 (Bankr.D.N.J. 1998), cited by

UBN in support of its position, a bankruptcy court within this district looking to New Jersey

law and Third Circuit precedent concluded that upon insolvency the principal of a corporation

owes a fiduciary duty to creditors under § 523(a)(4).  Similarly, in the unpublished decision in

JP Morgan Chase Bank v. Tamis, No. 05-CV-737 (JLL) (D.N.J. Nov. 16, 2005), a New Jersey

district court held that a *prima facie* case for determination of non-dischargeability under §

523(a)(4) was established where it was alleged that the directors of an insolvent close

corporation concealed accounts receivable from creditors.  The Bankruptcy Court declined to

follow the Carretta and Tamis courts and likewise found unpersuasive UBN's reliance on

ATR-Kim Financial Corp. v. Bonilla, 2008 US Dist. LEXIS 82691 (Bankr.N.D.Cal. Sep. 25, 2008) (noting that Delaware has adopted a common-law approach to fiduciary duty and holding that because Delaware corporate directors' duties stem from "quasi-trustee and agency" principles, directors have fiduciary duties with regard to the corporation and its shareholders at all times, regardless of wrongdoing).

Whether applying Delaware or California law, none of the cases cited by UBN in support of its contention that Debtor was acting as a "fiduciary" within the meaning of § 523(a)(4) are applicable here where the Bonus at issue cannot possibly be viewed as part of the *res* of any trust relationship between Debtor and UBN in his capacity as UBN's officer and director.  Contrary to UBN's assertion, the fact that Debtor received the Bonus at a time when UBN was in the zone of insolvency does not create a trust relationship here.  There are no facts to suggest that the terms of the Agreement were not negotiated at arms-length by UBN and Debtor.  Indeed, the effective date of the Agreement was June 19, 2000, before Debtor even began working at UBN.  Under the express terms of the Agreement, Debtor was to receive the full amount of the Bonus upon execution and delivery of the Agreement.  While the Agreement provided that Debtor was to "earn" the Bonus during the term of the Agreement, there was no requirement that Debtor hold any unearned portion in escrow. Under the terms of the Agreement, once received, the Bonus was Debtor's to do with as he chose, with only a contractual obligation that he repay any unearned portion should his employment terminate under the circumstances described therein during the first year of employment.

This Court simply does not view Debtor's duties with regard to the Bonus as independent of his contractual obligation under the Agreement.  The mere fact that the

Agreement imposed a contractual obligation to repay any unearned portion should Debtor leave his employ during the first year, does not give rise to a fiduciary duty to preserve those funds, independent of the contractual Agreement.  While the Third Circuit has indeed found the requisite fiduciary relationship under § 523(a)(4) where a director transferred funds of an insolvent corporation to himself, that determination was grounded on the conduct of the debtor and not simply based on his status as director or officer of a closely held corporation in the zone of insolvency.  See Docteroff v. Wolstein, 133 F.3d 210, 216-17 (3d Cir. 1997).  The circumstances present in Docteroff, and in those cases cited by UBN in support of its appeal which look to Delaware and California law, are simply not present here where Debtor's duty to repay stems from a contractual obligation.

For the same reasons, the Court is likewise unpersuaded by UBN's attempt to bring Debtor's conduct within the ambit of § 523(a)(4) based upon his status as the principal officer of a Debtor in possession.  While the Bankruptcy Court did not address UBN's contention in this regard, none of the cases cited by UBN in support of its contention dissuade this Court from its belief that the only duty Debtor had with regard to the unearned Bonus was a contractual obligation to repay.

Although the Court finds that UBN cannot establish a discharge exception under §523(a)(4) because it has failed to establish that a fiduciary obligation ran from Debtor to UBN, for completeness, the Court shall nevertheless consider UBN's contention that Debtor was liable for "defalcation" within the meaning of § 523(a)(4).  The term "defalcation" is not defined in the Bankruptcy Code. In ascribing meaning to the term defalcation, the Bankruptcy Court adopted the opinion of the bankruptcy court in JP Morgan Chase Bank v. Tamis, 398 B.R. 124, 132 (Bankr.D.N.J. 2008), where the court held that "an extreme recklessness

standard for measuring defalcation is the standard most consistent with the long held view that exceptions to discharge should be narrowly construed in favor of the Bankruptcy Code's 'fresh start' policy." The court reasoned that "[i]f a lesser or more broadly defined standard for defalcation is employed, it runs the risk of encompassing ordinary mistakes of judgment." Id.

Without resolving which standard applied, the bankruptcy court in Silver Care Center v. Parks, No. 05-2774 (JHW), 2007 WL 2033380, * 14 (Bankr.D.N.J. Jul. 10, 2007) noted

> Courts have struggled to reconcile the narrow exceptions to discharge provided for under the Code with the broad scope of the Black's Law Dictionary definition of defalcation. In re Millikan, 188 Fed.Appx. 699, 702 (10th Cir. 2006); In re Garver, 116 F.3d 176, 179 (6th Cir. 1997) (finding that the Black's Law Dictionary definition was over broad). These courts have opined that because embezzlement is separately listed in section 523(a)(4), defalcation must mean something other than embezzlement. Id. at 701-02. As a result, while it appears that a finding of defalcation "requires, at least, 'some portion of misconduct,'" Id. at 702 (quoting Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510, 512 (2d Cir. 1973)), courts have addressed the required degree of culpability in various ways.

The Silver Care Center court went on to note, as did the bankruptcy court in JP Morgan Chase Bank v. Tamis, 398 B.R. at 130, that the decisions among the courts addressing the issue of the mental state required to establish defalcation have taken three approaches: requiring evidence of reckless conduct, employing a negligence standard, or finding defalcation even in cases of innocent mistake.

Nevertheless, the Court need not resolve the issue of what mental state is required to establish defalcation because even under the most lenient standard, the Court finds no evidence of defalcation by Debtor. As discussed in connection with this Court's finding that Debtor was not acting in a fiduciary capacity with regard to the Bonus, Debtor's failure to return the unearned portion of the Bonus amounts to nothing more than a breach of contract.

15

Contrary to UBN's assertions, Debtor was not required to treat the Bonus as property entrusted to him until he remained with UBN for a year.  Indeed, nothing in the Agreement required him to do so.  Nor did the any language in the Agreement require Debtor to hold the money in escrow until it was earned.  Debtor simply had a contractual obligation to return any unearned portion to the extent that his employment lasted less than a year.  Additionally, the Court agrees with the Bankruptcy Court's conclusion (T34:13 - T35:22) that UBN's insolvency did not give rise to any duty requiring Debtor to hold the unearned Bonus in escrow until his contractual obligation to pay it back expired.

## IV.  CONCLUSION

For the foregoing reasons, the Court will affirm the April 16, 2009 Order of the Bankruptcy Court.

    /s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: March 12, 2010